GEO. W. OWENS ET AL. *v.* YAZOO & MISSISSIPPI VALLEY RAILROAD CO.

TAXATION. *Levee taxes. Lands outside of levee not liable. Laws of 1858, p. 32; laws of 1867, p. 237; laws of 1871, p. 57; laws of 1888, p. 40, construed.*

Lands lying between the Mississippi river and the levees built for protection against the waters thereof are not, under any law of this state, subject to taxes imposed for the construction of such levees or to meet liabilities incurred therein.

FROM the chancery court of Tunica county.
HON. A. H. LONGINO, Chancellor.
The opinion states the case.

*Calvin Perkins*, for the appellant.

All of the legislation in reference to levees, up to and including the act of 1858, exempted from levee taxes the lands lying between the levee and the river. Laws of 1850, pp. 38, 187, 220, 225; laws of 1858, p. 32. The act of 1867 provided a scheme for the liquidation of debts incurred under the act of 1858, and only had in view the subjection of the lands

liable to levee taxation under existing acts.   In other words, lands embraced in the old levee districts, created by the acts of 1858 and 1865, that created by the act of 1865, not including the county of Tunica, where the lands in controversy are situated.   Laws of 1867, pp. 237, 248; laws of 1865, pp. 51–66; *Green* v. *Gibbs*, 54 Miss., 608–9.   The intent to exempt lands outside of the levee is clearly shown by the amendment of this act, passed in 1871.   Laws of 1871, p. 65.   The act of 1871, whereby the levee district No. 1, including Tunica county, was created, is so framed that lands outside of the levee are not within the district.   The lands were never in any levee district, were never held by Gwin and Hemingway, commissioners, and could not be conveyed by them to the appellee.   And as the act of 1888 only related to lands held under these commissioners the auditor's deed to appellee under that act was also nugatory.   Laws of 1888, p. 40.

*Mayes & Harris*, for the appellee.
The brief of counsel for appellee cannot be found.

CALHOON, Special J., delivered the opinion of the court.
The railroad company filed its bill to remove as a cloud on its title a claim of ownership by Owens of certain lands in Tunica county, and to enjoin the other appellees from cutting on or removing cut timber from the lands, which they were doing under the authority of Owens.

The answer disclaims any assertion or claim of title to any of the lands described in the bill except that part of them described as all of section 33 and the southwest ¼ of section 34, township 4, range 12 west, and these are now the only subjects of controversy.

The claim of title by the railroad company is deraigned as to the north ½ of section 33 and the southwest ¼ of section 34, through a tax deed from the sheriff to the state, of July, 1868, for general state and county taxes of 1867, and the liquidating

levee tax deed of May, 1869, to the board of liquidating levee commissioners for the liquidating levee taxes of 1868, and, as to all the lands in controversy, through a sale to the state under the abatement act in May, 1875, and through a deed from Gwin and Hemingway, commissioners, to the railroad company, and also a deed from the auditor to it purporting to convey the state's title under the act of March 2, 1888, to quiet titles. Laws 1888, page 40.

The defense of appellants is, that the title set up by the railroad company is a nullity, because Gwin and Hemingway could, as commissioners, and the auditor could, sell lands only which were in the levee district, and subject to taxation for levee purposes, and that the lands in controversy are west of any levee ever constructed, are between the Mississippi river and the levee, and were never in the levee district, never subject to taxation for levee purposes, and that, while the title to these lands is in the state, Owens bought the title of the original owners in 1888, and has paid all taxes since, and the state only can dispute his title.

The questions which arise are these: (1) Were the lands in a levee district?   (2) If not, could Gwin and Hemingway validly sell them as commissioners?   (3) If not, could the auditor validly sell them under the act of 1888?

It seems plain that the lands between the levee and the river were never in any levee district and never subject to levee taxes. It does not appear to be disputed in this case that lands west of the levees were excluded from taxation by all the levee legislation prior to 1858.   The whole express policy of the state was, before then, to exclude in terms any conclusion that it would commit the monstrous wrong of taxing, to build levees, lands outside of them, which levees could not benefit, but must, in the nature of things, greatly injure if not destroy its value. Counsel seem to regard the first section of the act of December 2, 1858, entitled "An act to aid in repairing and perfecting the levee of the Mississippi river in the counties of," etc., as

matter of serious debate, because that section describes the lands to be taxed for levee purposes as "each and every acre of land in this state lying east of the Mississippi river," and so on.

This section would raise a very serious question indeed as to whether its general terms were designed to reverse the settled policy and commence to tax lands outside the levees. Fortunately the trouble is relieved by the concluding clause of section 18 of the same act, page 40, laws 1858, which uses this language: "Nor shall lands lying between the river and the levee, excluded from protection by the levee, be liable for levee tax." So, the humane and enlightened policy of exempting lands outside the levees from being taxed to build them or to pay old debts incurred in their construction, so far from being abandoned, was again emphasized by the act of 1858.

It seems hardly the subject of serious question that the act approved February 13, 1867 (Laws, pp. 237–248), to provide for the payment of the old debts of the board of levee commissioners organized under the said act of 1858, does not reverse the old policy of fairness and propriety. The first section alone can be instanced upon which to hang a doubt, and that manifestly shows that the legislative mind had the old levee district in mind.

A uniform current of legislation, consonant with justice and fairness, and exhibiting a settled state policy, and containing clauses of express exemption, will never be regarded as repealed by general language in a statute unless irreconcilable by a liberal construction in arriving at the legislative intent. The first section of this act, so far as necessary to quote, reads thus: "That there be, and is hereby, levied and assessed a uniform tax of five cents an acre per annum on each and every acre of land in the counties of Tunica, Coahoma, Bolivar, Washington, and Issaquena, and in such part of DeSoto county as was included in the levee district formed by the act approved December 2, 1858, and a like tax of three cents per acre is

hereby levied and assessed, per annum, on each and every acre of land lying in any other county included in said levee district, and which was subject to taxation by virtue of the provisions of the act of December 2, 1858."

Manifestly, the levee district under the old law was here in mind. If there had been any purpose to repeal the previous express exemptions of lands outside the levee, the purpose would have been clearly stated. But, so far from this is it, that there is no such repealing clause, and the only repealing clause is in the eighteenth section, and in these words: "And that all other acts prescribing other modes of payment of the indebtedness herein provided for, be repealed."

Repeals by implication are not favored by the law of construction of statutes, and are allowed only where there is clear repugnancy. The latter must sometimes yield, where general terms are used, and the real intent gathered from the whole scope of the act and history of legislation. Especially must this be so when the antecedent legislation is beneficent, and commends itself to plain principles of justice.

It had been the settled policy of legislation in Mississippi to allow minors a year after reaching majority to redeem lands sold for taxes. A revenue act of 1846 omitted this. Our high court of errors and appeals, Judge Handy delivering the opinion, upheld the right to redeem (*Richards* v. *Patterson*, 30 Miss., 583), and on the ground that there was no plain repugnancy or clear intent to repeal the former parts of statutes giving the right. It follows from the foregoing views that the lands in controversy were never in any district subject to taxation for levee purposes.

We think it plain that no title whatever was conveyed by the deed of Gwin and Hemingway, commissioners. This deed on its face shows the conveyance to be of " the following lands, the same being the property of the late liquidating levee board, and sold as such, the parties of the first part conveying only such title as the late liquidating levee board has." But the

late liquidating levee board had no title whatever, because under no law ever in force could this board acquire title to any land not within the levee district. All intendments are against the state's parting with her title unless the purpose plainly appears.

The act of March 2, 1888, referred only to lands in the levee district by any fair construction. It referred to the lands, embraced in that district, sold by Gibbs and Hemingway and Gwin and Hemingway as commissioners. We think it unnecessary to dissect this act, because our conclusion will be apparent upon an examination of it. If, by any misadventure or clerical misprision, there had crept into the decree or commissioner's deed lands on the Chickasahay, it could hardly be seriously contended that the state designed to part with her title to those under that act.

The history of levee lands shows a witch's cauldron mixture of titles, by sales to one or the other of divers levee boards, and the state itself, for general taxes. This mixture produced an incertitude which clogged sales, prevented purchasers from buying from individuals or the state, and produced a state of affairs such as that learned lawyers could not form a satisfactory opinion as to the validity of titles. So, in the language of the preamble of the act, "The development and settlement of that portion of the state [the levee district portion of the state] is [was] much retarded by the unsettled condition of land titles," and, therefore, the state proceeded to yield up her own claim of title to any purchasers from those commissioners of lands in the levee district where the titles were unsettled, upon certain terms.

*The decree is reversed, and decree is ordered here dismissing the bill.*