## PAEPCKE-LEICHT LUMBER CO. *v.* SAVAGE.[*]

(Division B. Oct. 27, 1924. Suggestion of Error Overruled Nov. 24, 1924.)

[101 So. 709.   No. 23389.]

1. QUIETING TITLE. *Plaintiff must prove title to land in question, in himself.*

   In a suit to confirm title and cancel clouds thereon it is necessary for the complainant to prove title in himself to the land, otherwise his bill should be dismissed.

2. STATUTORY PROVISIONS.

   Under the Abatement Act, passed March 1, 1875, the state thereby declared that it would abandon all claim under preceding tax sales to it on condition that the owner pay the taxes on the land for the year 1874.

3. TAXATION. *Payment of taxes of 1874 was satisfaction of all prior taxes due state.*

   The payment of these 1874 taxes was a satisfaction of all taxes due the state, and the state released its claim of title to these lands.

4. LEVEES AND FLOOD CONTROL. *Sale of land outside of and not protected by levee for levee taxes void.*

   A sale of lands for levee taxes is void when the lands are outside and not protected by the levee. These lands are not subject to levee taxes.

5. TAXATION. *Owners of land when sold for taxes necessary parties defendant to proceedings to confirm tax titles and those acquired by adverse possession.*

   In proceedings to confirm tax titles and titles acquired by adverse possession under sections 305 and 306, Hemingway's Code (sections 548 and 549, Code 1906), it is necessary to make parties defendant those persons appearing from the abstract to be the owners of the land at the time of their sale for taxes.

6. TAXATION. *Proceedings to confirm tax titles held void because publication of summons was for unknown parties only, though apparent owners appeared on face of pleadings.*

   Where publication is only made for unknown persons under either of these sections, and the abstract made an exhibit to the bill gives the names of the apparent owners when the lands were sold

for taxes, it then appears from the face of the pleadings that necessary parties have been omitted from the bill and from the publication, and the proceeding is void.

7. Judgment. *Decree void for want of service of process on proper defendants may be attacked directly or collaterally.*

A decree which is void because of no service of process upon proper defendants may be attacked either directly or collaterally.

---

*Headnote 1. Quieting Title, 32 Cyc, p. 1328; 2. Taxation, 27 Cyc, p. 1375 (1926 Anno); 3. Taxation, 37 Cyc, 1375 (1926 Anno); 4. Levees and Flood Control, 36 C. J., section 57; 5. Taxation, 37 Cyc, p. 1512; 6. Taxation, 37 Cyc, p. 1512; 7. Judgments, 34 C. J. section 836.

Appeal from chancery court of Tunica county.

Hon. G. E. Williams, Chancellor.

Suit by the Paepcke-Leicht Lumber Company against J. L. Savage. From a decree dissolving a temporary injunction and dismissing the bill, plaintiff appeals. Affirmed.

*Watson & Jayne,* for appellant.

First Tract. The first tract of land in controversy is the fractional west half of section 17, township 4, range 12 west, and accretions (except the north half of the northwest quarter thereof), one hundred ten acres. In this tract appellant claims an undivided one half interest, deraigning its title thereto through a sale to the state for taxes, made July 7, 1868, and thence through mesne conveyances to appellant, all of which appear in appellant's deraignment of title. The introduction of this deed was objected to by appellee, on the ground that it had been redeemed from the tax debtor having paid the taxes for the years 1874 and 1875, as provided by what is commonly known as the "Abatement Act" (Laws 1875, p. 11). Evidence was offered of such payment after the cause was in progress of argument; the case having been closed at the June term and the argument having been

postponed until September 20, 1920, with leave to file documentary evidence up to August 20, 1920. The appellee failed to offer this evidence up to August 20, and did not offer it until the argument was well advanced on September 20. Appellant contends that this evidence, under the circumstances, should have been excluded. Without this evidence appellant would have been entitled to a decree for the undivided one-half interest in this particular tract, as prayed for in its bill of complaint.

Second Tract. The second tract in controversy is the fractional southwest quarter of section 16, township 4, range 17, west, with accretions, containing twenty-seven acres, more or less. Appellant showed a complete paper title to this particular tract, through its deraignment of title. Against the chain of title thus shown, appellee defended on two grounds, to-wit: (a) That one of the links of appellant's chain of title failed in that the deed from the tax collector to the levee commissioners, filed May 17, 1869, and the deed from the tax collector for the levee board, dated January 20, 1878, and the deeds appearing in the record on pages 175, 176 and 177, whereby this land passed out of the levee boards and out of the state to the grantees therein named, were all void, because the lands when forfeited for taxes for levee purposes were situated outside of the levees, and were unprotected thereby, and therefore not subject to sale; and (b) because appellee had a good title to the land through a tax sale made thereof on April 4, 1910. for taxes of the year 1909.

To the first position above mentioned, appellant responds that, whether the levee sales were good or bad, that question was put at rest by the quieting title proceedings in the case of *M. A. Hunter* v. *Unknown Parties,* No. 1536, and set out in full in the record on pages 140 to 166, inclusive, wherein it will be found that M. A. Hunter, through whom appellant deraigned title, began

and carried to conclusion proceedings to quiet the title to this tract of land, along with the other lands therein mentioned; that the bill of complaint was against unknown defendants; that this tract of land was described therein; it was also described in the deraignment of title attached to the bill, this particular sale being there mentioned; the land, and this particular sale, as well, were also described in the confirmation notice shown by the proof of publication in the case; this was also true of the second confirmation notice; both as to the land and the particular sale, and the title to this tract was confirmed in the final decree and specially described therein. The foregoing proceedings were had under section 548 of the Code of 1906. This statute applied to the confirmation of levee tax titles, as well as to the confirmation of state tax titles. *Belcher* v. *Mhoon*, 47 Miss. 613; *Beirne* v. *Burdet*, 52 Miss. 795. The effect of this decree was to conclude all issues that were made or could have been made on the allegations of the bill of complaint, by all claimants, whether they took through the owners of the land at the time it was forfeited to the levee board or not.

The law is well settled that a decree of this kind is conclusive as to all issues involved, or that could have been raised in the case. The scope and effect of such a decree is stated in the following authorities: 32 Cyc.-b 1384; 23 Cyc.-h 1336; *Wall* v. *Wall*, 28 Miss. 409; *Chiles* v. *Champenois*, 69 Miss. 603. Nor will the appellee be allowed to attack collaterally the regularity of this confirmation decree. *Wall* v. *Wall*, *supra*. A decree confirming title to land becomes a muniment of title and is usable both in deraignment of title and as evidence thereof. *Railway Co.* v. *Le Blanc*, 74 Miss. 650. The two years limitation provided by section 3111 of the Code of 1906 (Hemingway's Code 2475) applied in the instant case. The decree had been rendered for more than two year before the effort on the part of appellee to attack

it in the instant case.   Therefore, appellant was entitled to have the application of this statute in this case. *Brooks* v. *Spann,* 63 Miss. 198; *Brown* v. *Wesson,* 78 So. 833.

The correctness of the decree in this cause is presumed. This is the rule where there is "a possible state of facts which would justify the judgment." *Duncan* v. *McNeal,* 31 Miss. 704; *Cannon* v. *Cooper,* 39 Miss. 784; *Cason* v. *Cason,* 31 Miss. 784; *Vicksburg Grocery Co..* v. *Brennan,* 20 So. 845.

In the second phase of appellee's defense with regard to this particular tract of land, to-wit:   that he took title to all that is left of fractional southwest quarter and accretions of section 16, township 4, range 12 west, about twenty-seven acres, through a tax sale thereof made on April 4, 1910, to one Wicks, and from Wicks to him, appellant relies as follows:   (a)   That the tax sale was void because, as disclosed by the record, the assessor did not give notice by publication of the fact that he had filed the assessment roll, upon which the tax sale was based. In other words, this tax sale suffers from the same infirmity as that passed on in the case of *Cameron* v. *Whittington,* 82 So. 311.

Third Tract.   Tract Number 3, as claimed by appellee under the tax sale to him, made on April 6, 1914, is described as follows:   All frac. no levee, section 13, township 4, range 13 west, ten acres.   Appellee, however, furthered endeavored to identify this particular tract in his answer, by an allegation that "is known as a part of Favorite Island," thereby claiming the particular tract to have been a part of the tract of land lying in and attached to the western front of section 18, East of Favorite Chute in section 13, as shown on the photogravure sheet of Exhibit 2, as distinguished from the fifteen acre tract lying West of Favorite Chute, shown in the same. Exhibit.   The defense of appellee as to this particular tract is two-fold:   (a)   Claim of ownership through the

tax deed above mentioned; (b) alleged failure of appellant to show title in itself to this particular tract.

This phase of the case will be here discussed under the two headings just stated, both as to the law and the facts. (a)   Title through tax sale.   When the tax collector's deed, of April 7, 1914, conveying this tract of land to appellee (appellee's Exhibit 16), was offered in evidence by appellee, it was objected to by appellant, on the ground that the assessor did not give the notice required by law to the taxpayers of his having filed the assessment roll; also, that the tax deed was void from the standpoint of description; also, because there was no section 13, township 4, range 13 west, in existence at the time of the making of the assessment roll, or at the time of the sale of the land to appellee, as that section had long since washed away; also, because, in the original Government survey and plat of section 13, there were two fractions of that section platted and charted, and the two were in separate tracts, with intervening waters between them, and there is nothing in this particular deed to identify either of these particular tracts, or to apply the tax collector's deed thereto.   The record discloses that the only notice given to the taxpayers was that set out on page 115 of the record, which was given by the chancery clerk, and not by the assessor.   Appellant contends that this particular act rendered this particular tax collector's deed void, under the authority of the case of *Cameron* v. *Whittington, supra.*   Appellant, also, contends that the description in the tax deed is void for the reasons covered in the above objections.   There is nothing in the tax collector's deed to identify the particular ten acre tract therein described as having been sold, nor can the description be aided by the allegations of the answer that it was a part of Favorite Island.   On the other hand, the Government survey shows two tracts, separated from each other by a stream of water, as composing section 13.

The objection of appellant, based on the non-existence of section 13, as a section, at the time of the assessment and at the time of the sale thereof for taxes, belongs to the next phase of this particular question, and will be there discussed.   (b)  Alleged failure of appellant to show title to section 13 in itself.  Appellant contends that it showed title in itself to all of the lands in and West of sections 18 and 19, as shown in plat, Exhibit 4, as accretions thereto.  That, if any part of the land in question, as there mapped, lies over the original *situs* of section 13, it formed there as accretions to sections 18 and 19, long after the two original tracts of section 13 had been washed away by the Mississippi River.  This is a question of fact and of law, and is the main issue in the case.

(1)   Boundaries.  When the Mississippi River broke through or adopted Bordeaux Chute as its channel about 1870, it became a boundary stream between the lands on either side of the above channel thus adopted, and the law applicable to boundary streams is the same, whether between individuals, states or nations.  (a)   Making a cut-off or changing its course by avulsion.  *Missouri* v. *Nebraska,* 197 U. S. 577, 49 L. Ed. 372; *Nebraska* v. *Iowa,* 143 U. S. 359, 36 L. Ed. 186; Vattel Law of Nations, secs. 267 to 269; or, (b)   By the stream adopting an existing chute or prong of its existing channel.  *Missouri* v. *Kentucky,* 11 Wallace, 395, 20 L. Ed. 116; *Indiana* v. *Kentucky,* 136 U. S. 479, 34 L. Ed. 329; *Victoria* v. *Schad,* 29 S. W. 681.

(2)   The General law of accretions is applied to the Mississippi River and riparian ownerships thereon with uniformity, and is the same on both sides of that stream, whether the states fronting thereon are common-law states or civil-law states; that is to say, whether they are derived from British sources or from French sources through the Louisiana Purchase.  The principles governing the law of accretions is the same on either side of the

river. This subject of accretions will be discussed later on herein.

(3)    As to islands, towheads, mud flats and bars and channel formations in rivers, the law is not the same in the states of Arkansas and Mississippi.    (a)    In Mississippi individual ownership extends to the middle of the stream, and the lands formed between the shore line and the middle of the stream belong to the owner of the shore line.    This is true because the common-law rule as to non-tidal streams obtains in Mississippi and applies to the Mississippi River.    3 Kent 427; Morgan v. Reading, 3 S. & M. (Miss.) 366; *Archer* v. *Gravel Co.,* 58 L. Ed. (U. S.) 850.    (b)    In Arkansas such islands, towheads, mud flats and bars as may form in the channel of a stream though the same may after formation fill in and connect up with the shore line, belong to the state, with the exception of such lands as were granted by the Acts of 1901 to individuals (Kirby's Dig. 34918).    The civil-law rule on this subject brought forward through the Code Napoleon obtains that jurisdiction.    "Islands, islets and accumulations of mud formed in the bed of rivers and streams navigable, or admitting floats, belong to the nation, if there be no title or prescription to the contrary."    Code Napoleon, sec. 560; *Cox* v. *Arnold,* 31 S. W. (Ark.) 592; *Wallace* v. *Driver,* 33 S. W. (Ark.) 641; *Nix* v. *Pfeiffer,* 93 S. W. (Ark.) 951.    "The title and rights of riparian or littoral proprietors in the soil below high water mark of navigable waters, are governed by the laws of the several states subject to the rights granted to the United States."    *Chivley* v. *Bowlby,* 152 U. S. 1, 38 L. Ed. 331; *Archer* v. *Gravel Co., supra.*    At common law navigable streams were understood to be those affected by the tide water, and lands below the ordinary high water mark thereof vested in the sovereign. *Smith* v. *Maryland,* 18 How. 71, 15 L. Ed. 269; *Barney* v. *Keokuk,* 49 U. S. 324.    In such streams, a riparian owner

fronting thereon had no title below the high water mark. *Chivley* v. *Bowlby, supra.* However, this rule does not apply in America to fresh water streams. On such streams, all grants of land where the expressions deliminating the water line are general, confer the proprietorship to the middle thread of the stream and entitle the owner to the accretion. The size of the river does not alter the rule, and it applies to so great and public a watercourse as the Mississippi River. *Jones* v. *Soulard,* 24 How. 41, 16 L. Ed. 604; *Archer* v. *Gravel Co., supra.*

However, all preceding conveyances through which appellants derived title, where these two sections were conveyed by section numbers, even though the accretions, alluvion, or sand bars were not mentioned, they nevertheless passed through these grants; for a grant of land by numbers carries to the thread of the stream; and with it all accretions, bars and mud flats, and this is true, whether the grantor be individual, a state, or the nation. *Jones* v. *Soulard, supra; Leavenworth* v. *Smith,* 57 So. (Miss.) 805; *Richardson* v. *Sims,* 80 So. 4; *Archer* v. *Southern Ry. Co.,* 75 So. 251; *Jefferies* v. *E. Omaha Land Co.,* 134 U. S. 190, 33 L. Ed. 876.

It is contended by appellant that when all of section 13 was washed away, the ownership of the then proprietor thereof was extinguished, and as the river encroached upon sections 18 and 19 eastward, they became riparian lands; that, thereafter, whatever land was made to these sections belonged to the owners thereof, and not to the former owner of section 13. That is to say, if all of the land of a riparian owner be washed away so that the shore line is on the next land to the rear, such rear owner becomes a frontal or riparian owner; that if the stream then recedes, forming accretions to the new shore owner's land, he takes these accretions or alluvion, no matter if they extend forward over the site of the lands of the former owner, which were washed away. 1 Farnum on Waters, 332; *Minton* v. *Steele,* 28 S. W. 746; *Bush* v.

*Alexander,* 203 S. W. 1028; *Widdecombe* v. *Chiles,* 73 S. W. 444, 61 L. R. A. 309; *Nailor* v. *Cox,* 21 S. W. 587; *Welles* v. *Bailey,* 10 Atl. 563; *Nebraska* v. *Iowa, supra; Parker* v. *Canter,* 63 Pac. 617.

The terms "alluvion" and "accretion" are used as being synonymous by the courts. *Jefferies* v. *E. Omaha Land Co., supra; New Orleans* v. *U. S.,* 10 Peters, 662, 9 L. Ed. 573. The cases last cited define accretion and alluvion fully, and the definitions there fit the contentions of appellant in this case. The Mississippi court early held that the center thread of stream was the boundary between riparian lands. *Magnolia* v. *Marshall,* 30 Miss. 109. It has recently held that the same rule applies to non-navigable lakes and extended ownership to the middle or center of the lake ratably with other riparian owners. *Richardson* v. *Simms,* 80 Miss. 4.

*Dulaney & Jaquess,* for appellee.

I. APPELLANT'S BILL OF COMPLAINT WAS PROPERLY DISMISSED, BECAUSE IT FAILED TO SET FORTH SUCH A DERAIGNMENT OF TITLE AS THE STATUTE REQUIRES. Section 308, Hemingway's Code, section 551, Code of 1906. "It is settled by an unbroken current of decisions, that to enable a complainant to cancel the defendant's title as a cloud, he himself must show as perfect a title, legal or equitable, as would enable him, the title being a legal one, to recover against the defendant in an action of ejectment." *Chiles* v. *Gallagher,* 67 Miss. 413, 3 So. 208; *Long* v. *Stanley,* 79 Miss. 298, 30 So. 823; *Cook* v. *Friley,* 61 Miss. 1; *Jackson* v. *Port Gibson Bank,* 85 Miss. 645, 38 So. 35.

Appellant did not cure the defects in its original deraignment by asking leave to amend, first, because the amendment offered is subject to the same objections as the original; and second, because amendments are not allowed to injunction bills for delay, or after full answer, except in the discretion of the court, and this discretion

should be exercised with great caution.  2 High on Injunctions (3 Ed.), sec. 1592, et seq.

II.  The appellant was required to plead and prove a perfect title and could prevail only upon the strength of its own title and not upon any defect in the title of appellee.  This proposition is too well established to require citations, and we assume is conceded by counsel for appellant.

III.  Appellant wholly failed to prove any title through adverse possession.

IV.  First tract.  An undivided one-half interest in the southwest quarter of section seventeen in township four of range twelve west.  Appellant neither deraigns nor proves title to the undivided one-half interest in the southwest quarter of said section 17 from the United States Government through mesne conveyances. Its only claim of title depends upon a sale to the state of Mississippi, July 7, 1868, a sale to the board of liquidating levee commissioners, May 17, 1869, a sale to the board of liquidating levee commissioners, May 8, 1871 and sales by the auditor and treasurer, October 3, 1881, September 30, 1884 and May 23, 1888.  This claim of title is not valid because:  A.  The record shows that said sales to the liquidating levee commissioners were void, the title to the land being at the time of sale in the state of Mississippi under the sale of July 7, 1868.  *Ricks* v. *Baskett,* —— Miss. ——; *Partee* v. *Vance,* 102 Miss. 215, 59 So. 73; *Creegan* v. *Hyman,* 93 Miss. 481, 46 So. 952.  B.  Said sales to the board of liquidating levee commissioners were void because said land as shown by the undisputed proof, was never protected by any levee and never subject to any levee taxes.  *Owens* v. *Railroad Co.,* 74 Miss. 821. C.  The title conveyed to the state of Mississippi by the sale of July 7, 1868, was conveyed by the state to R. C.

Irwin as shown by appellant's proof. D. Appellee holds a valid title to this land from the state of Mississippi through R. C. Irwin and mesne conveyances. E. Leaving out of view the sale by the state of Mississippi to Irwin, the appellant could have acquired no title under the sale to the state, because said land was not sold under the Abatement Act of 1875, under which taxes prior to 1874 for state and county were abated and because the then owners of said land paid the taxes of the year 1874 on said land.

Our position is that if appellant could otherwise show. any claim under this tax sale, under the Abatement Act of 1875, all state and county taxes were abated on all lands delinquent or sold for taxes prior to the year 1874 upon condition that the taxpayer should pay the taxes of that year, and that proof that the taxes for the fiscal year 1874 were paid by the reputed owner, R. S. Carter, in November, 1874, extinguished any title then held by the state under that sale. The Abatement Act of 1875 is discussed and explained in *Cato* v. *Gordon,* 63 Miss. 320; *Cochran* v. *Baker,* 60 Miss. 282. In *Gibbs* v. *Green,* 54 Miss. 592 and *Bunch* v. *Wolerstein,* 62 Miss. 56, the supreme court held that the attempt in the act to abate levee taxes was unconstitutional as the legislature had no power to abate anything but state and county taxes. Taxes of 1874 were not delinquent until January 1, 1875. *Carothers* v. *McLaren,* 56 Miss. 371.

The following cases are more directly in point: *Dingey* v. *Paxton,* 60 Miss. 1038; *Paxton* v. *Valley Land Co.,* 68 Miss. 739; *Sigman* v. *Lundy,* 66 Miss. 522. Our position as to the proof of payment of the taxes of 1874 having the effect to defeat appellant's claim of title to the first tract is not questioned in appellant's brief, but appellant complains that this evidence should have been excluded because of the time at which it is offered and contends that without this evidence appellant would have been entitled to a decree for the undivided one-half interest in this

tract. We submit that not only did the court properly exercise its discretion in allowing the amendment and proof, but that it would have been reversible error to have done otherwise. Appellant's case was in no way prejudiced. *Hart* v. *Potter*, 80 Miss. 796.

V. Second tract. The southwest quarter (sw¼) of section sixteen (16) in township four of range twelve (12) west. Appellant neither deraigns nor proves title to this tract from the United States Government through mesne conveyances. Its only claim of title depends upon a tax sale to the board of liquidating levee commissioners, dated May 17, 1869, the tax deed to the levee board, dated January 20, 1873, and a proceeding in the chancery court of Tunica county styled *M. A. Hunter* v. *Unknown Parties*. This claim of title is not valid because: A. The sale for levee taxes were void because said land was not protected by any levee, and was not subject to any levee taxes at the respective times of sale. We assume this is conceded here as in the court below. See testimony of J. L. Savage and testimony of W. G. Jaquess. *Owens* v. *Railroad Co., supra*. Mr. Savage testified that a small part of this land was protected by the levee built in 1882 (after the sale). Mr. Jaquess testified that none of this land was ever protected by a levee. B. The proceedings in the case of *M. A. Hunter* v. *Unknown Parties*, were void. This proceeding was brought under section 548 of the Code of 1906, section 305, Hemingway's Code 1917. As there had merely been an attempt to sell the land for taxes for which it was not liable, M. A. Hunter had no tax title to confirm. *Magee* v. *Turner*, 92 Miss. 438, 46 So. 544. Our attack upon the decree in the Hunter case is a showing that the decree is absolutely void, because the tax sales under which M. A. Hunter claimed were absolutely void. The attack in this case is the same that was made in the case of *Magee* v. *Turner, supra*.

Section 305, Hemingway's Code, is an unusual stat-
ute and contains a number of provisions with which a
complainant must comply before he can receive a valid
decree divesting title out of parties who have not been
named but who have merely been summoned as "un-
known parties." These requirements are jurisdictional
and the statute should be strictly construed. *Moore* v.
*Summerville,* 80 Miss. 323. The proceeding by M. A.
Hunter is also void because she failed to comply with
the requirements of the statute. The statute referring
to the bill says: "and it shall in all cases be sworn to."
There appears at the bottom of the bill, below the signa-
ture, which is the signature of J. W. Henderson, solici-
tor for complainant, the following: "Sworn to and sub-
scribed before me, by J. W. Henderson, Attorney, this
the 14 day of April, 1911," and signed by the clerk. This
affidavit is not a good affidavit to the bill, because it
does not comply with section 1011, Code of 1906, section
731, Hemingway's Code. *Jacks* v. *Bridewell,* 51 Miss.
881; *Waller* v. *Shannon,* 53 Miss. 500; *Smith* v. *Denny,*
90 Miss. 434, 43 So. 479. A judgment or decree without
process is void and may be attacked collaterally or other-
wise. *Theobald* v. *Deslonde,* 93 Miss. 208, 46 So. 712;
*Wall* v. *Wall,* 28 Miss. 409; *Cotton* v. *Harland,* 124 Miss.
691, 87 So. 152.

The presumption of jurisdiction cannot be resorted
to when the pleadings or evidence show that jurisdiction
did not exist, and there is no presumption that a recital
of facts in the record is incorrect or incomplete: 15 R.
C. L. 895; *Johnson* v. *Hunter,* 77 C. C. A. 359, 147 Fed.
133; *Galpin* v. *Page,* 18 Wall. 350, 21 U. S. (L. Ed.) 959;
1 Freeman on Judgments (4 Ed.), sec. 125; *Kunzi* v.
*Hickman* (Mo.), 147 S. W. 1002; *Indiana & Arkansas
Lumber & Mfg. Co.* v. *Brinkley* (C. C. A.), 164 Fed. 963,
23 Cyc. 1089, par. V.

IV. THIRD TRACT. FRACTIONAL SECTION THIRTEEN IN TOWNSHIP FOUR OF RANGE THIRTEEN WEST. Appellant claims no title to section thirteen as such but claims that the section was washed away by the River; that the lands now on its original site formed as accretions to sections 18 and 19, township 4, range 12 west, and that appellant is the owner of these accretions and the two sections last mentioned. Appellee contends: A. That appellant has neither deraigned nor proved title to sections 18 and 19; B. That a part of section never washed washed away; C. That if all of section 13 washed away, the lands which re-formed on its site, were not accretions to sections 18 and 19; D. That the doctrine of submergence and reappearance applies in a suit between individuals, where state boundaries are not involved; E. That the appellee is the owner of section 13 under a valid sale for taxes. *Wineman* v. *Reeves*, 245 Fed. 254; 1 Farnum on Waters, 332; *Ocean City Ass'n* v. *Shriver*, 64 N. J. L. 550, 51 L. R. A. 425, 46 Atl. 690; *Mulry* v. *Norton*, 100 N. Y. 424, 53 Am. Rep. 206, 3 N. E. 581.

The doctrine of submergence and re-appearance is the one applicable to this case and not the doctrine of opposite boundaries or of accretions. *Arkansas* v. *Tennessee*, 246 U. S. 158, 62 L. Ed. 638; Chitty's Blackstone, Book 2, p. 12; *Jefferies* v. *E. Omaha Land Co.*, 134 U. S. 178, 33 L. Ed. 872.

The rule by which the thread of a stream becomes a fixed boundary, applies only to grants made on opposite sides. If the stream flows wholly through the land of one man, of course he owns all of the land, that is, the banks of both sides and all of the submerged land. 27 R. C. L. 1364. The following early statement of the doctrine of submergence and re-appearance by Sir Matthew Hale has been quoted many times and followed in the United States: "If a subject hath land adjoining the sea, and the violence of the sea swallow it up, but so

that there yet be reasonable marks to continue the notice of it, or though the marks be defaced, yet if by situation and extent of quantity and bounding upon the firm land the same can be known, though the sea leave this land again, or it be by art or industry regained, the subject does not lose his property, and accordingly it was held by COOKE and FOSTER, M. 7 Jac. C. B., though the inundation continue forty years." *Mulry* v. *Norton, supra;* 29 Cyc. 352, par. 3 and 4; *Fowler* v. *Wood,* 73 Kan. 511, 85 Pac. 763, 117 Am. St. Rep. 534; *St Louis* v. *Rutz,* 138 U. S. 226, 11 Sup. Ct. Rep. 337, 34 L. Ed. 941; *Ocean City Ass'n* v. *Shriver, supra.*

VIII. APPORTIONMENT OF ACCRETIONS. In reply to the contention of appellant that in any event the lower court should have entered a decree apportioning accretions between appellant and appellee, we submit that not having shown title in appellant to sections 18 and 19, or any part of the accretions adjacent to appellee's land, appellant was not entitled to an apportionment; and further that since appellant did not apply to the lower court for this relief, it cannot be considered as a ground for reversal. *Minton* v. *Steele,* (Mo.) 28 S. W. 746.

*Watson & Jayne,* in reply for appellant.

I. PROPRIETY OF ALLOWING AMENDMENT OF DERAIGN-MENT. The objection to the sufficiency of the deraignment of title should have been raised by demurrer, as the deraignment was a part of the bill of complaint. The objection to the form of the original deraignment and the fullness of the details thereof having been made during the hearing, it was imminently proper for the application for leave to amend by way of making the deraignment fuller in detail as it was timely and of merit. Leave to amend should have been granted, as was done. More than this, it was done without delaying the hear-

ing. If, on the other hand, appellee had been prejudiced thereby, he should have made application for time within which to respond to the amended deraignment. This he did not do. *Beard* v. *Green,* 51 Miss. 856; *Field* v. *Middlesex Banking Co.,* 77 Miss. 180, 26 So. 365; *Hart* v. *Potter,* 80 Miss. 796, 31 So. 898; *Greenwood Grocery Co.* v. *Bennett,* 101 Miss. 573, 58 So. 482-598. Nor does it matter that injunctive relief was one of the titles for relief relied on in the bill of complaint.

II. Validity of hunter decree. The complainant in this cause brought her bill under a double aspect, containing two titles for equitable relief, one based on the tax sales set out in the bill of complaint, and the other based on occupation for ten years. This decree concluded all issues raised in the case, or that could have been raised in the case.

The affidavit is signed by J. W. Henderson, attorney, and the jurat of the officer is all that is required. Such oaths can be made by attorneys, Code 1906, section 1011, (Hemingway's Code, section 731.); *Southwestern Ins. Co.* v. *Treadway,* 113 Miss. 189, 74 So. 143. We submit that the two affidavits meet the requirements of the statute, both as to the bill being sworn to, and as a basis for process. If we be correct in this, then, notwithstanding the fact that the lands were not protected by the levee and not subject to be sold for levee taxes, still the decree would be good on the occupation thereof, as above contended by us.

Construction of section 548 of the Code of 1906 (section 305, Hemingway's Code), Section 549, Code of 1906 (section 306, Hemingway's Code). As we read these two statutes, the first one related to the confirmation of tax titles and the other to the conformation of any title, no matter by what tenure the complainant may hold. In the first section is mapped out what process is required

to be had as a basis for the confirmation of titles there-under; and, in the latter section it is provided as fol-lows: "And the law for notice, process, proceedings and practice, as provided for confirming and quieting tax titles shall apply, no matter by what tenure the com-plainant may hold."

We contend that the doctrine of submergence and re-appearance does not apply in the instant case, either in fact or law. On this point, we contend the law to be that: (1). If land of a riparian owner washes away so that the owner of land next behind becomes a riparian owner, and, thereafter, land reforms on the site of the original owner, either as an island between the center thread of the stream and the next shore owner or as accretion to the land of the latter, the land belongs to the then ripa-rian owner. *Morgan* v. *Reading,* 3 S. & M. 366; *Archer* v. *Gravel Co.,* 58 L. Ed. (U. S.) 850. (2). If accretions progress from the second riparian owner across the site of the first riparian owner, the land belongs to the sec-ond riparian owner.

Argued orally by *H. C. Watson,* for appellant, and *C. A. Jaquess* and *John W. Dulaney,* for appellee.

Sykes, P. J., delivered the opinion of the court.

The appellant lumber company, complainant in the chancery court, prayed in its bill to quiet and confirm its title to lands therein described, and also to enjoin the cutting of timber by the de-fendants on these lands. The cause was heard on bill, answer, and proof, the tem-porary injunction was dissolved, damages were allowed the defendants, and the bill was dismissed. From which decree this appeal is here prosecuted. The three tracts of land whose title is in issue in this cause lie outside of the levee in Tunica county.

In a suit to confirm title and cancel clouds thereon it is necessary for the complainant to prove title in himself to the land, otherwise his bill should be dismissed. *Chiles v. Gallagher,* 67 Miss. 413, 7 So. 208; *Long v. Stanley,* 79 Miss. 298, 30 So. 823.

We will discuss separately the title of appellant to each of the three tracts of land involved:

*First Tract.* Appellant claims to own an undivided one-half interest in the South West quarter of section 17, township 4, range 12 west. Its claim of title to this tract rests upon a sale to the state on July 7, 1868; a sale to the board of liquidating levee commissioners May 17, 1869; a sale to the board of liquidating levee commissioners May 8, 1871.

During the argument of the case, over the objection of the appellant, the court permitted the appellee to prove the payment of taxes on this land for the year 1874.

Under the Abatement Act passed March 1, 1875 (Laws 1875, chapter 2), the state thereby declared that it would abandon all claim under preceding tax sales to it on condition that the owners of the land would pay the state, county, and levee taxes for the year 1874. The payment of the taxes for that year was thus a satisfaction of all taxes due the state, and the state by it released its claim to any title in these lands. *Sigman v. Lundy,* 66 Miss. 522, 6 So. 245; *Dingey v. Paxton,* 60 Miss. 1038; *Paxton v. Valley Land Co.,* 68 Miss. 739, 10 So. 77. It was entirely proper for the court to admit the evidence of the payment of these taxes. The sale of these lands to the board of liquidating levee commissioners was void because the lands were outside of and were not protected by the levee. *Owens v. Railroad Co.,* 74 Miss. 821, 21 So. 244.

The title of the complainant (appellant) to these lands rests upon the validity of the title of the state and levee board above set out, and, since both the sales to the

state and the levee board were void as above shown, it necessarily follows that the complainant failed to prove its title in this tract.

*Second Tract.* The South West quarter of section 16, township 4, range 12 west. Appellant's first claim of title to this tract depends upon a tax sale to the board of liquidating levee commissioners dated May 17, 1869; a tax deed to the levee board dated January 20, 1873; and a proceeding in the chancery court of Tunica county styled *M. A. Hunter* v. *"Unknown Parties."* The sales for levee taxes were void because the lands were not protected by the levee.

Some years before the bringing of this suit Mrs. M. A. Hunter, predecessor in title of complainant, brought suit in the chancery court to confirm her title to these same lands under sections 305 and 306. Hemingway's Code. In her bill she first claimed a valid tax title and, second, to have been in the actual adverse possession of the land for the statutory period. As an exhibit to her bill she filed an abstract of title. The defendants named in the bill were "unknown parties." The affidavit of the attorney to the bill states in effect that the post office addresses of the persons who owned the lands at the dates of the several sales for taxes are to him unknown and that he believes that they are unknown to the complainant. Further, that affiant, after diligent search and inquiry for unknown defendants, has been unable to locate or find any of them, and that he believes the original owners as well as any other persons who may have any claim or interest in the lands are nonresidents of the state of Mississippi and their post office addresses are to him unknown, and he believes are unknown to the complainant.

The abstract of title made an exhibit to the bill discloses the names of the owners of a great portion of this land before the alleged tax sales. These people were

from this record the apparent owners of the lands when they were sold for taxes, yet neither they nor their heirs are made defendants in the Hunter bill.

Under either of these two sections, 305 or 306, it is necessary that the bill disclose the names and places of residence of all persons interested in the land so far as known to the defendant or as he can ascertain by diligent inquiry. The reputed owners of the lands at the time of the tax sales, as disclosed by the abstract of title, are under these sections interested parties in these lands and they are necessary parties defendant. The names of these necessary defendants cannot be unknown to the complainant when the abstract of title discloses them. Also a diligent inquiry informs him of these names which appear on his abstract.

In the case of *Smith* v. *Denny*, 90 Miss. 434, 43 So. 479, it is said that:

"It is of the very essence of a proceeding to confirm a tax title that the owner of the land at the date of sale, or his heirs, as the case may be, should be made parties, as well as other persons interested in the land, so far as known to the complainant, or as he can ascertain by diligent inquiry."

Under these statutes it is necessary that the persons or their heirs who appear to have been the owners of the lands at the time of the tax sales be made parties defendant. The publication for unknown defendants is only good where the bill shows that the persons interested are unknown to complainant and that he has made diligent inquiry for their names and could not obtain them. This process by publication for unknown defendants is in lieu of personal service and summons by publication when the names are known. The proper service or publication of process is jurisdictional. The names of these defendants were not unknown, consequently the process for unknown defendants was not correct and was equivalent to no

process, and ther..?ore the court acquired no jurisdiction either over the lands or the persons of the defendants in the Hunter proceeding. That proceeding was void, and can be attacked here. It is not a case of a decree being merely voidable or irregular, but a case of a void decree. The principle is well settled in this state that, where a decree is absolutely null and void, it is subject to attack anywhere collaterally or otherwise. *Theobald* v. *Deslonde,* 93 Miss. 208, 46 So. 712.

Though the bill in this case was not only to confirm a tax title, but also to confirm a title acquired by adverse possession, as may be done under section 306, Hemingway's Code, the process for defendants is the same under both statutes, and, since there was no process, the Hunter proceeding was void under both statutes.

*Third Tract.* Fractional section 13, township 4, range 13 west. The appellant claims title to this land claiming it as accretions to sections 18 and 19. If appellant had proved title to sections 18 and 19, we would then be presented with a most interesting question, namely, whether or not section 13 as originally platted has been entirely washed away by the Mississippi river and whether the land subsequently formed over the site of this old section has become by accretion part of sections 18 and 19. This question we are not called upon to decide, for the reason that the appellant has failed to prove title to sections 18 and 19.

The only record title of appellant to sections 18 and 19 is based upon void sales of the land for levee taxes, because these two sections were not protected by the levee, and the levee sales were void for the reasons given in discussing tract No. 1.

The other claim of the appellant to title to these sections is based upon the void decree in the Hunter case above discussed.

Neither are we called upon to discuss the question of the proportioning of the accretions to the various tracts of land involved, for the reason that the appellant has failed to show title to any of the lands. For this reason the decree of the court dismissing the bill, dissolving the injunction, and allowing an attorney's fee is affirmed.

There being no contest as to the right of the attorney to an allowance of a reasonable fee in this court, and that five hundred dollars is a reasonable fee, counsel for appellee is here allowed for this service an additional fee of five hundred dollars.

*Affirmed.*