WHITE et al. v. MOALES.*

(Division A. June 13, 1927.)

[113 So. 341. No. 26053.]

1. PLEADING. *Demurrer to bill on ground of variance between allegations and exhibits attached thereto held properly overruled (Hemingway's Code, section 339).*

Demurrer to bill of complaint basing relief sought on notes and deed of trust, filed as exhibits thereto, on ground of variance between allegations of bill and exhibits *held* properly overruled, under Code 1906, section 579 (Hemingway's Code, section 339), providing that, in case of conflict between recitals of bill and exhibits, exhibits control.

2. VENDOR AND PURCHASER. *Grantee accepting deed and thereafter selling land at profit held estopped to deny delivery of deed by grantor.*

Grantee accepting deed, placing it of record, and thereafter selling land to another at profit, *held* estopped to deny that deed was delivered, or liability for purchase price of land because deed was not delivered during grantor's lifetime.

3. MORTGAGES. *Evidence held to support finding that notes and deed of trust were not signed on condition that signature of another would be secured.*

Evidence *held* to support finding by chancellor that, at time purchaser executed notes and deed of trust, there was no condition or understanding that signature of another was to be secured as condition precedent to their validity, or that, if such understanding did exist, it was subsequently waived.

4. ESTOPPEL. *Purchaser accepting deed and selling land at profit held estopped to assert that notes and deed of trust were signed conditionally.*

Purchaser having accepted deed, placed it of record, and subsequently sold land at profit to another, who afterwards denuded it of timber thereon, *held* estopped to assert that notes and deeds of trust executed to grantor were on condition that signature of another would be secured.

5. BILLS AND NOTES. *Purchaser failing to complete purchase under contract, and not signing notes and deed of trust, held not liable personally.*

Where one of purchasers under contract for sale of land failed to complete transaction and notes and deed of trust thereon were executed by other purchaser, the one not signing such notes and deed of trust is not liable thereon personally.

6. MORTGAGES. *Failure of decree to fix liability of defendants, in suit to determine ownership of notes and to foreclose deed of trust, held erroneous.*

Where bill, in suit to determine ownership of indebtedness, evidenced by notes and for foreclosure of deed of trust securing payment thereof, also prayed for a personal decree against

several defendants, failure of court, on entering decree adjudicating such ownership and ordering foreclosure, to also definitely fix liability of defendants and amount thereof *held* erroneous.

*Corpus Juris-Cyc. References: Deeds, 18CJ, p. 211, n. 37; Estoppel, 21CJ, p. 1207, n. 38; p. 1210, n. 81; Mortgages, 41CJ, p. 447, n. 46; Pleading, 31Cyc, p. 299, n. 34; Vendor and Purchaser, 39Cyc, p. 1904, n. 43; p. 1940, n. 80 New.

APPEAL from chancery court of Tate county.

HON. J. H. CALDWELL, Special Chancellor.

Suit by Mrs. Mary Agnes Moales, as administratrix of the estate of W. H. Moales, deceased, against R. P. White, C. V. Kizer, and J. T. Kizer, subsequently amended so as to substitute Mrs. Mary Agnes Moales individually as complainant. Decree for complainant, and defendants White and C. V. Kizer appeal. Reversed and remanded.

*E. D. Dinkins* and *May, Sanders & McLaurin,* for appellants.

I. The court erred in overruling the demurrer to the bill. This suit was against R. P. White, C. V. Kizer and J. T. Kizer on an alleged joint and several indebtedness of R. P. White and C. V. Kizer. While the bill of complaint charged a joint and several indebtedness, the exhibits to the bill showed several liability of only one of the parties. This was a fatal variance and the demurrer should have been sustained. *Kimbrough* v. *Ragsdale,* 69 Miss. 677.

Where a written contract sued on shows no cause of action, the bill is demurrable, although the averments conflict with the exhibits. *Swope* v. *Watson,* 136 Miss. 348.

It will be noted that the bill of complaint charged a joint and several liability of White and Kizer on the alleged deed of trust and notes; and the deed of trust and notes when examined showed that they had never been

signed at all by Kizer; hence, no recovery could have been properly made against Kizer upon the contract as sued upon, because, as declared by the court in *Kimbrough* v. *Ragsdale, supra,* an action will not lie upon alleged joint liability so as to sustain a several judgment. In other words, the exhibits to the bill showed an entirely different cause of action from that sued upon. The rule is that the exhibits control as against the bill.

II. The court erred in holding that there had been a delivery of the deed from Moales to White and Kizer, because it was not delivered during the lifetime of Moales. The effect of the court's decision in this case is that a dead man can deliver a deed. We submit that the rule is too well settled the other way to justify extended citation. *Davis* v. *Williams,* 57 Miss. 843; *Weisinger* v. *Cock,* 67 Miss. 511; 7 So. 495, 19 A. S. R. 320; *Ligon* v. *Barton,* 88 Miss. 135, 40 So. 555.

The execution and delivery of the deed was essential to enable anyone to maintain an action against these appellants. The existence of the alleged indebtedness depended upon the vesting of title in them by the alleged deed. The deed not having been delivered, title not having vested, no indebtedness arose.

III. The court erred in holding that R. P. White and C. V. Kizer were bound by the notes and deed of trust, because: (a) White signed on condition that the signature of Kizer would be secured, which condition was never met; (b) Kizer was not bound because he never signed the notes and deed of trust and never accepted the deed.

It is well settled that a note signed on condition that others shall sign is voidable if the others do not sign and this condition may be pleaded against the payee or his representatives. N. I. L., section 2594, Hemingway's Code; *Goff* v. *Bankston,* 55 Miss. 578; *State* v. *Allen,* 69 Miss. 508; Note to *Benton County Savings Bank* v. *Boddicker,* 45 L. R. A. 343, 3 R. C. L., page 861.

It is well-settled law that the proof must correspond with the pleadings and that the overruling of a demurrer does not preclude objection to evidence which does not conform to the pleading. Griffith's Ch. Pr., sections 564-65; *Pierce* v. *Lacey,* 23 Miss. 192; *Bowman* v. *O'Reilly,* 31 Miss. 261; *U. S. Casualty Co.* v. *Malone,* 126 Miss. 288; 21 R. C. L., pages 601-03-05.

IV. The decree was erroneous because: (a) It held that Mrs. Moales, the complainant, was the owner of the alleged indebtedness evidenced by the notes and deed of trust; (b) the decree did not specify who, if any one, did owe the debt, but without adjudicating that essential fact ordered the land to be sold.

"Every decree . . . of sale ought to be perfect in itself, or as nearly so as possible." 19 R. C. L., section 355, at page 549.

"A decree as a judgment should show on its face what the court has decided." *Wenwag* v. *Brown,* 26 Am. Dec. 433.

In a foreclosure proceeding, "The decree should indicate with certainty the persons respectively to and against whom the relief, and the several features thereof, is granted." Griffith's Ch. Pr., section 626.

If we apply the foregoing rules to the decree in this case, it will not survive the test.

*Charles H. Moffat* and *Herbert H. Holmes,* for appellee.

I. The first error assigned is: "The court erred in overruling the demurrer to the bill." We do not think a careful scrutiny of the bill and the exhibits by the court will induce the belief that there was any material variance between the averments in the bill and the recitals in the exhibits.

A variance as defined by our courts, in its legal sense, means a substantial departure in the evidence adduced from the issue as made by the pleadings. *Yorty* v. *Case*

*Threshing Machine Co.,* Ann. Cas. 1913D 64 and note at 68; *Williams* v. *U. S.,* 3 App. Cas. (D. C.) 335.

The rule requiring exhibits to conform to the bill means nothing more than that on demurrer the exhibits shall be treated as if copied in the bill. The exhibits were attached to the bill and made a part thereof, and asked to be treated by the court as if fully copied therein. Section 579, Code of 1906; *House* v. *Gumball et al.,* 78 Miss. 259, 29 So. 71; *McKinney* v. *Adams,* 95 Miss. 832, 50 So. 474.

II. It is alleged that: "The court erred in holding that there had been a delivery of the deed from Moales to White and Kizer, because it was not delivered during the lifetime of Moales." We do not insist that a dead man can execute or deliver a deed. Death, of course, seals his lips and stills his hand, but as well said by all of our courts, he can set machinery in motion during his lifetime, looking to the delivery of a deed even after his death, and the books abound with cases where the delivery was effected after the death of the grantor.

The proof overwhelmingly showed Dean to be the attorney for White and Kizer. If he was, then there was a perfect delivery of the deed. Our courts have uniformly held that the question of delivery is one of intent. *Davis* v. *Williams,* 57 Miss. 843. The same principle is announced in *Hall* v. *Waddell,* 78 Miss. 26, 27 So. 937; *Wilson* v. *Bridgeforth,* 66 So. 524; *Kane* v. *Doe,* 9 S. & M. 387. In addition to the foregoing it would seem that defendants are unquestionably estopped from denying their liability in view of the benefits received under the deed. 16 Cyc. 787; citing *White* v. *Jenkins,* 33 So. 287; *Wood* v. *Bullard,* 151 Mass. 324; *Calhoun* v. *Pierson,* 10 So. 880, and many others.

III. The court did not err in holding that R. P. White and C. V. Kizer were bound by the notes and deed of trust. While it is true that White said he signed the notes and trust deed conditionally, yet it is also true that

he failed to reveal the name of anyone with whom he had such an understanding. In other words, no other witness corroborates that statement and White was unable to give the name of any person with whom he effected the alleged understanding. 13 Cyc., page 734; *Alfred Ingraham v. John Grigg,* 13 S. & M. 22.

Whatever defense White might have had by reason of any alleged ''understanding'' regarding his nonliability in the event Kizer failed to sign the notes was entirely extinguished and forfeited when he accepted the deed, had same filed and recorded, proceeded to take over the property for which the trust deed and notes were given, held it out to the world as his own, and later conveyed it by warranty deed to J. T. Kizer for an amount in excess of his own obligation to W. H. Moales. If there ever was a case for the invoking and application of that highly equitable doctrine of estoppel, it seems to us it is the instant case. 16 Cyc. 787-9.

C. V. Kizer and R. P. White contracted to buy the property and pay the sum of forty-eight hundred dollars, fifteen hundred of which was to be paid in cash and the balance evidenced by notes aggregating thirty-three hundred dollars. C. V. Kizer and R. P. White accepted the deed from Moales to the land, which deed recited the aforesaid consideration. C. V. Kizer exercised acts of ownership over the property and conveyed his one-half undivided interest in the property to J. T. Kizer, who denuded the land of its virgin timber and rendered the property practically worthless. Hence, we fail to see how C. V. Kizer can avoid responsibility to Mrs. Moales for his conduct in this matter.

IV. It is said: ''The decree was erroneous, because: (a) It held that Mrs. Moales, the complainant, was the owner of the alleged indebtedness, evidenced by the notes and the deed of trust; (b) the decree did not specify who, if any one, did owe the debt, but without adjudicating that essential fact, ordered the land to the sold.''

The decree rendered by the court was not a final decree in the cause and did not purport to be such. The only questions adjudicated were that of the indebtedness as described in Exhibit B and that of the right of the complainant to have the land sold.

"A decree is final when nothing in the case is reserved by the court for further decision." Griffith's Ch. Pr., section 610. See, also, 19 R. C. L., sections 367 at 559, Citing *Grant* v. *Phoenix Life Ins. Co.,* 106 U. S., 429, 1 S. C. T. 414, 27 U. S. (L. Ed.) 237.

The court certainly made no mistake in decreeing that Mrs. Mary Agnes Moales was the owner of the indebtedness evidenced by the notes of R. P. White in Exhibit B and ordering the land sold. An equitable lien on the land for the unpaid purchase price arose by implication. 17 R. C. L. 605, 27 R. C. L., sections 313-14, at 572; *Fonda* v. *Jones,* 42 Miss. 792.

The proof is conclusive that Mrs. Moales was the owner of the indebtedness and the court ordered the land sold. All other questions were reserved by the court until the coming in of the commissioner's report.

Argued orally by *J. O. S. Sanders,* for appellants.

COOK, J., delivered the opinion of the court.

This is an appeal from an interlocutory decree of the chancery court of Tate county adjudging that the complainant, Mrs. Mary Agnes Moales, is the owner of a certain indebtedness evidenced by promissory notes signed by the appellant R. P. White, and ordering the foreclosure of a deed of trust executed by the said White to secure the payment of said notes, and directing the application of the proceeds of sale to the discharge of this indebtedness.

The complainant, as administratrix of the estate of W. H. Moales, deceased, filed her bill of complaint, alleging that on May 8, 1919, W. H. Moales was the owner

of certain land therein described; that he sold said land to R. P. White and C. V. Kizer,. for a consideration of four thousand eight hundred dollars, part cash and the balance evidenced by the notes of the grantees, upon which there was then due a balance of two thousand four dollars and six cents, principal and interest; and she attached to her bill, as an exhibit thereto, a copy of the deed conveying the said land. It was further alleged that the said W. H. Moales departed this life testate during the year 1919, and that the complainant is executrix of his estate, duly and legally qualified under the laws of the state of Tennessee, and that as such executrix it was her duty to collect said notes then past due; and she attached to her bill, as exhibit thereto, the notes evidencing the indebtedness.

The bill further charged that, after the purchase of said lands by the said R. P. White and C. V. Kizer, the said C. V. Kizer, on October 4, 1919, sold to J. T. Kizer his interest in said lands, the consideration for said sale being, among other things, that the said J. T. Kizer assumed the payment of the indebtedness due by C. V. Kizer to W. H. Moales; that, at the time of the sale of said land by W. H. Moales to R. P. White and C. V. Kizer, the indebtedness evidenced by the notes was fully recited and set out in the deed of conveyance so that there was a purchase-money lien in favor of the said W. H. Moales; and at the time the said J. T. Kizer purchased said land from the said C. V. Kizer, he had notice of the deferred payments that were due on said land; that this fully appeared from a copy of the deed to J. T. Kizer, which was filed as an exhibit to the bill of complaint; that the said R. P. White and C. V. Kizer, at the time of the purchase of said land, also executed their deed of trust in favor of W. H. Moales to secure the deferred payments, a copy of this deed of trust being filed as an exhibit to the bill of complaint.

The bill further charged that the lands conveyed by the said W. H. Moales, deceased, were covered with prac-

tically virgin timber, which largely made up the value of said lands; that after the purchase of the same by White and C. V. Kizer, they, together with the other defendant, J. T. Kizer, removed said timber from the lands so that it was not then worth the amount of the balance of said indebtedness; that the said R. P. White and C. V. Kizer deny liability for said indebtedness, claiming that J. T. Kizer has assumed the same; that J. T. Kizer has declined and refused to pay said indebtedness; that while the complainant has a remedy by foreclosure of the deed of trust, she is advised and believes that this would not produce the money due her for the reason that the timber cut and removed from said land constituted its chief value; that in view of the fact that the said deed of trust was executed by R. P. White and C. V. Kizer, and J. T. Kizer is claiming the land under a deed from C. V. Kizer and some kind of a contract with R. P. White, the nature and terms of which were unknown to complainant, and in view of the further fact that all of the defendants have permitted said land to be sold for taxes, and each and all of them refuse to pay the amount due to the complainants, she is entitled to a decree against the original grantees in the deed of W. H. Moales for the amount of the indebtedness still due and unpaid, and for the satisfaction of said decree she is entitled to have said land sold and the proceeds credited thereon. The said R. P. White, C. V. Kizer, and J. T. Kizer were made parties defendant, and the bill prayed for a personal decree against each of them for the amount of the indebtedness, and for a sale of the land and the application of the proceeds of the sale to the satisfaction of said decree, and for the appointment of a commissioner to make the sale, and for general relief. The bill of complaint was afterwards amended so as to change the character thereof from one by the administratrix or executrix to one by Mrs. Mary Agnes Moales individually, as sole legatee under the will of W. H. Moales, and sole owner of the indebtedness sued for.

The appellants R. P. White and C. V. Kizer demurred to the bill upon the following grounds:

"First. There is no equity on the face of the bill, and no decree can be rendered thereon.

"Second. The said bill is vague, indefinite, uncertain, and contradictory in all of its parts and in all of its allegations.

"Third. The exhibits filed with said bill do not correspond with the allegations thereof, nor with each other, but are contradictory throughout.

"Fourth. The bill alleges that notes for deferred payments were executed by the 'grantees' named in the deed and the deed indicates the same, while the notes exhibited were not so executed, nor do they mature at the time stated in the deed, and they clearly appear not to be the notes intended to be sued on in this cause.

"Fifth. The bill alleges that the deed of trust exhibited with the pleadings was executed by R. P. White and C. V. Kizer, 'grantees' in the deed and to secure notes executed by them for purchase money due on the land, and that it was executed after the deed and to secure the notes mentioned in the deed, while the exhibit shows that it was executed by R. P. White alone, and long before the date of the deed, and that it secures notes differing widely in maturity from those mentioned in the deed and sued on here.

"Sixth. There is nothing in the said bill by which the notes sued on and exhibited with it can be identified with the land transaction out of which they are alleged to have arisen, nor is there anything either in the bill or exhibits by which the notes exhibited are secured by lien of any character on the land alleged to have been sold."

This demurrer was overruled, and thereupon the appellants R. P. White and C. V. Kizer filed an answer denying that the said W. H. Moales sold the said land to them by deed or otherwise, which effectually conveyed title to them; and alleged that the said deed exhibited with the bill of complaint, although it may have been executed on

May 8, 1919, was not delivered to the appellants until after the death of the said Moales, which occurred on July 2, 1919; and consequently that said deed was ineffectual to pass title to them. They denied that they executed the notes sued on, or that they each delivered any notes of any character to the said Moales, or to any one for him, or that they were in any way indebted to the said Moales. They denied that at the date of the said deed alleged to have been executed by W. H. Moales, or at any time thereafter, they executed a deed of trust on said land to secure the alleged deferred payments; they denied that the deed of trust filed as an exhibit to the bill of complaint shows that they jointly executed the same, and charged that any such deed of trust executed by them, or either of them, was wholly worthless and ineffectual to convey said land as security for the alleged debt, for the reason that they never had any title to convey. They denied that they cut or removed any timber from said lands, and denied in detail any and all liability to complainant for the alleged purchase money of said lands. As to the notes exhibited with the bill of complaint, they denied that they were executed by them, or either of them, or that they conformed to the allegations of the bill of complaint; and the appellant R. P. White, whose name alone appears to have been signed to said notes, alleged that they constituted no liability against him; that they were wholly void because they were not executed until after the death of the said W. H. Moales, and then with the clear and distinct understanding that they were not to be delivered and would not bind him unless and until they should be signed by the said C. V. Kizer; that the said deed of trust was executed by him upon like condition; and that they were so accepted by the person presenting them to him for his signature; and if delivered to the complainant, or to any one for the said W. H. Moales, or his estate, such delivery was in violation of this condition, and consequently said notes and deed of trust are wholly void. The defendant J. T. Kizer did not file an answer to the

bill, and this appeal is by R. P. White and C. V. Kizer only.

The proof offered at the trial shows that, on May 8, 1919, R. P. White and C. V. Kizer entered into a written contract with W. H. Moales to purchase the land in question, and paid to the agent of Moales five hundred dollars as earnest money and part payment of the purchase price. The contract provided for a sale of the land, for a consideration of four thousand eight hundred dollars, upon the following terms: one thousand five hundred dollars cash.; one thousand dollars, one year from the date of the deed; one thousand dollars in two years; and one thousand three hundred dollars, in three years from the date of the deed with six per cent interest on all deferred payments. Provision was also made for time for the preparation of an abstract of title and the examination thereof, and for the delivery of the papers and payment of the consideration upon approval of the title. A special warranty deed conveying the property to R. P. White and C. V. Kizer was prepared and acknowledged by Moales and his wife, Mary Agnes Moales, on May 21, 1919, and was placed in the hands of Moales' attorney for delivery under the terms of the contract. This deed recited the same consideration as that named in the contract for the purchase of the land. The proof clearly establishes the fact that J. F. Dean, an attorney at law of Senatobia, Miss., represented R. P. White in passing upon the title to this land and in all negotiations leading to the final conclusion of the sale. It is shown that shortly after the execution of the contract C. V. Kizer got into some serious trouble in his county and left the state, and on July 21, 1919, R. P. White alone signed three notes for the amounts named in the contract and deed to White and Kizer, making them payable to W. H. Moales in one, two, and three years from date. On the same date he executed a deed of trust covering this land to secure the payment of these notes, in which it was recited that:

"Whereas, R. P. White, party of the first part, is indebted to W. H. Moales in the sum of three thousand three hundred dollars, on his three promissory notes for one thousand dollars due one year from date, one thousand dollars, due two years from date, and one thousand three hundred dollars, due three years from date, for purchase money for land herein described."

On the same day, July 21, 1919, J. F. Dean, attorney for White, addressed the following letter to W. G. Cavett, attorney for Moales:

"I send you herewith three notes from R. P. White to W. H. Moales, one for one thousand dollars; one for one thousand dollars, two years from date; one for one thousand three hundred dollars, three years from date.

"I also send deed of trust from R. P. White to W. H. Moales, on the land bought and conveyed in deed herewith returned.

"Mr. C. V. Kizer declines to accept the land, and Mr. White assumes the entire account and takes the land.

"I inclose a deed to be executed by Mr. W. H. Moales to Mr. R. P. White. The contract calls for a warranty deed, and the deed sent to Mr. White is a quitclaim. Mr. White would not object to this so much, but Mr. Kizer has gotten into trouble and left the country, and before leaving he told Mr. White to take all the land as he could not manage it under the circumstances.

"If Mr. Moales can sign the deed which I send, have him execute it and return it to me. If he is unable to execute the deed, then return the original deed to White and Kizer, and Mr. Kizer will execute a quitclaim to Mr. White when we find him, if we ever do. It is unnecessary for Mrs. Moales to sign the deed at all. Have Mr. Moales attach documentary stamps on new deed."

Attached to this letter, as a part thereof, was a statement of the balance of the cash payment due for the purchase of the land, and a check to cover this balance of one thousand twenty-five dollars was inclosed with the letter. This letter clearly indicates that the deed

executed in May by Moales was then in the hands of White or his attorney, but this record does not show when it first came into their possession. W. H. Moales died on July 2, 1919, and in accordance with the instructions contained in the above letter from Dean to Cavett, the original deed was returned to White, and was accepted by him and afterwards placed of record. On October 4, 1919, C. V. Kizer executed a deed to J. T. Kizer conveying to him an undivided one-half interest in the said land, and reciting a "consideration of two thousand five hundred dollars cash to me in hand paid, and the assuming of the payment to W. H. Moales of my three notes, amounting to three thousand three hundred dollars, balance due" on said land (describing it). R. P. White testified that he also sold his interest in this land to Kizer, at a profit, but no deed from White to the said Kizer appears in this record. The appellant White testified that he signed the notes and deed of trust on the condition that they were not to be delivered and become binding on him unless and until signed by C. V. Kizer, but he was unable to name any person with whom he had such an understanding or agreement.

Upon the proof, the chancellor entered a decree adjudging that the complainant was the owner of the indebtedness sued on; that said indebtedness was past due and owing; that it is evidenced by the notes of R. P. White, copies of which were filed as Exhibit B to the original bill of complaint; that the deed of trust executed by the said R. P. White, covering the land as described in the original bill, is a valid and binding lien on said land in favor of the complainant, Mrs. Mary Agnes Moales; and that she was entitled to have said land sold for the satisfaction of her said indebtedness. It was further ordered that the title of said land be vested in the clerk of the chancery court, as commissioner, and that it be advertised and sold by such commissioner upon the terms therein fixed, and that report of said sale be made to the chancellor, in vacation, upon a fixed date, and that said commissioner, out

of the proceeds of the sale, first redeem the said land from the tax sale. The decree further provided that:

"All other matters and the question and against which one of said defendants, or all of them, a deficiency judgment should be rendered in case said land should not bring the full amount of said indebtedness as above set out, these and all other questions are reserved until the coming in of the commissioner's report for confirmation after said sale is made."

A decree *pro confesso* was entered against the defendant J. T. Kizer.

The first assignment of error presented by counsel for the appellant is that the court erred in overruling the demurrer to the bill of complaint. The argument of counsel upon this point is directed, principally, to the variance between the averments of the bill and the exhibits filed therewith and as a part thereof. The bill alleges the execution of the notes sued on by both R. P. White and C. V. Kizer, while the notes filed as exhibits to the bill show that they were signed by R. P. White alone, as was the deed of trust securing the same.

Section 579, Code of 1906 (section 339, Hemingway's Code), provides that "exhibits filed with a bill, as part of it, shall be considered, on demurrer, as if copied in the bill;" and, in case of a conflict between the recitals of the bill and the exhibits as to the existence of a fact, the exhibits will control where the complainant bases the relief sought upon the written exhibits. In the case at bar the complainant bases the relief which she seeks upon the promissory notes and deed of trust filed as exhibits to the bill, and on demurrer these exhibits will be treated as if copied in the bill, and the exhibits, which are the basis and foundation of the relief sought, will control and will support a decree granting such relief as may be based thereon; and therefore we are of the opinion that the demurrer was properly overruled. In the case of *McKinney* v. *Adams,* 95 Miss. 832, 50 So. 474, in discussing the question of a variance between the recitals

of the bill and an exhibit, where the exhibit is made the basis of the relief sought, this court said:

"The rule invoked as to exhibits controlling on demurrer, in case of a conflict in the recital as to the existence of a fact between the exhibit and the bill, meant nothing more than that such exhibit should so control, where a complainant bases the relief which he seeks upon the written exhibit annexed to the bill. In other words, an allegation in a bill describing a writing and characterizing a writing as having a certain character or being a certain thing, would not control the court when, looking at the writing itself, it shows it is not the kind of writing so described; or, when there is a fact stated in the bill, and a written exhibit annexed to the bill, which exhibit is the basis and foundation of the relief sought, states that fact to be otherwise, then, of course, the exhibit will control on demurrer under the statute. . . . All that section 528, Annotated Code 1892, meant was that exhibits should be considered on demurrer as if copied in bill, contrary to the former practice."

The appellant next contends that the court erred in holding that there had been a delivery of the deed from Moales to White and Kizer, because it was not delivered during the lifetime of Moales.

In 18 C. J. 211, the rule is announced that, "where the grantor has delivered his deed to a third person for delivery to the grantee without condition, with the intention that it shall take effect as a present transfer, it will pass title, although not delivered to the grantee until after the death of the grantor," and this announcement is supported by many authorities there cited. There is testimony in this record tending to show that after the grantor signed and acknowledged this deed on May 21, 1919, he placed it in the hands of his attorney for delivery to the grantees, and that he never thereafter exercised, or sought to exercise, any control over this deed, and that it was in the hands of the grantee, or his attorney, prior to the final consummation of the transaction

by the execution of the notes and deed of trust on July 21, 1919. The letter of White's attorney to Moales' attorney, dated July 21, 1919, clearly shows that it was the intention of White to close the transaction by accepting the deed to White and Kizer, if another deed could not be secured from Moales, and thereafter to secure a deed from C. V. Kizer to perfect his title. We do not think it is necessary, however, to expressly pass upon the sufficiency of the testimony to establish delivery of the deed, as we are of the opinion that the appellant White is clearly estopped to deny that the deed was delivered. He accepted the deed and thereafter placed it of record and sold the land to J. T. Kizer, at a profit. The cash payment was made; the notes for the balance of the purchase price, and the deed of trust securing the same, were executed and were delivered to the agent of the grantor by the attorney for the appellants; and the appellant White entered into possession and control of the land, selling the same to one who afterwards denuded it of the timber, its chief value; and, having accepted and received the benefits under the deed, he is clearly estopped from denying the delivery thereof or his liability for the purchase price of the land.

The next assignment of error is that the court erred in holding "that R. P. White and C. V. Kizer were bound by the notes and the deed of trust, because: (a) White signed on condition that the signature of Kizer would be secured, which condition was never met; (b) Kizer was not bound because he never signed the notes and deed of trust and never accepted the deed."

It is true that White testified that he signed the notes and deed of trust upon the condition that they should not be delivered and become binding upon him until signed by C. V. Kizer, but he was unable to name any person with whom he had any such understanding or agreement. The letter of his attorney, who was clearly shown to have been fully authorized to represent him and to have been in consultation with him on that date, strong-

ly tends to show that no such condition existed. With this letter to the attorney of the grantors, which was written on the same day that the notes and deed of trust were executed, White's attorney inclosed the notes and deed of trust and explained that Kizer was unable to join in the transaction for the reason that he had gotten into trouble and had left the country, and that it was the purpose and intention of White to assume the entire contract. In accordance with the directions in this letter, the original deed was returned to White, or his attorney, and was accepted by White and placed of record. The land was sold by him and he received all of the benefits to be derived under the deed. Under these facts, we are of the opinion, first, that the evidence would support a finding by the chancellor that no such condition or understanding existed, or if so, that it was waived; and, second, that the appellant White is now estopped to assert any such condition to defeat his liability for the balance of the purchase price of this land; and we are of the opinion that the court below was correct in holding that these notes were valid and subsisting obligations of the said R. P. White. We do not understand from the decree that the court expressly decided the question as to the liability of C. V. Kizer on these notes, but we are of the opinion that, upon the facts, he is not liable on these notes, which he never signed, and which are the basis and foundation of the suit.

Under the last assignment of error, it is contended that the decree is erroneous, because "(a) it held that Mrs. Moales, the complainant, was the owner of the alleged indebtedness evidenced by the notes and deed of trust; (b) the decree did not specify who, if any one, did owe the debt, but without adjudicating that essential fact ordered the land to be sold."

We think the testimony clearly establishes the complainant's ownership of the notes and the indebtedness sued on, and her right to recover thereon. Upon the question of the liability of the several defendants, however,

the decree merely adjudicated that the complainant was the owner of the indebtedness; that the said indebtedness as set out in the original bill, and Exhibit B thereto, was due and owing to the complainant; that said indebtedness was evidenced by the notes of R. P. White, copies of which were filed as Exhibit B to the original bill in this cause, and reserved the question of the liability of the several defendants for any deficiency that might exist after the sale of the land and application of the proceeds to the discharge of the indebtedness. The bill prayed for a personal decree against the several defendants, and we think that the decree of the court below should have definitely fixed the liability of the defendants, and the amount thereof, and should have ordered a sale of the land and the application of the proceeds to the discharge of this decree, if the same was not paid and fully discharged within a reasonable time limit to be fixed by the court.

A decree *pro confesso* was entered against J. T. Kizer, and he has not joined in this appeal, and no question as to his liability for this indebtedness is here presented. For the error above indicated, the decree of the court below will be reversed and the cause remanded.

*Reversed and remanded.*