Thomas *v.* Hinson, et al.

No. 39556          March 21, 1955          78 So. 2d 611

*Morse & Morse,* Poplarville, for appellant.

*Williams & Williams,* Poplarville, for appellees.

610

ETHRIDGE, J.

This suit involves a controversy over one-half of the minerals under a sixty-acre tract of land in Pearl River County. Appellant, Mrs. Myrtis Thomas, was the complainant in the Chancery Court. The defendants, the appellees, are L. W. Hinson, his wife, Mrs. Mabel Lampton Hinson, and four other persons who were alleged to be partners in the firm of Lampton-Hinson Company. The Chancery Court dismissed the bill of complaint.

Mr. and Mrs. L. W. Hinson, two of the defendants, apparently owned considerable property in the vicinity of their home in Lumberton. Both of them are partners, along with one other person, in the partnership known as Lampton-Hinson Company. Prior to 1939 Mrs. Hinson was not a partner in this firm. In 1931 Jake Clarke owned the sixty acres in question, and gave a deed of trust on it to the old firm of Lampton-Hinson Company. In the same year the land was sold for delinquent taxes to the company, which in 1935 conveyed all of its interest in the land to Mrs. Hinson. In 1938 she purchased a quitclaim deed to it from the owner at the time of the tax sale, Jake Clarke. Apparently this deed, along with numerous other deeds to properties owned by the Hinsons, was filed in their store building in Lumberton, which was destroyed by fire in 1942. Around 1939 E. T. Amacker, father of complainant Mrs. Thomas, requested permission of Mr. Hinson to live on the land, and upon his assent, Amacker moved thereon and was living on it in 1943 as a tenant at sufferance. Amacker was elderly and alone, and after several requests prevailed upon Hinson to sell him the land for $500. Hinson testified that he advised Amacker and Mrs. Thomas that he would reserve one-half of the minerals, and that they agreed that he could do this. Amacker signed a written statement in 1953, before the trial of this case, that he understood that this was the agreement, but he denied that in his testimony. At any rate, Mr. Hinson stated that because of the 1942 fire he was unable to locate the deed to the property, and that he thought in good faith that the title to it was in him rather than his wife. The chancellor so found on adequate evidence. Amacker had no money to purchase the land, so Mrs. Thomas paid Hinson the purchase price for it, and on March 16, 1943, Hinson executed a deed conveying it to Mrs. Thomas without any exception of minerals. This deed was recorded shortly thereafter.

In 1945, Mrs. Thomas was advised by her brother that apparently Mr. Hinson did not have title to the property when he made the deed, so she employed U. B. Parker, an attorney of Wiggins, to check the title. He ascertained that title was in Mrs. Hinson, and so advised Mr. Hinson. He stated that he was very sorry about the mistake and that he would talk to his wife about it. Parker told him that the matter could be cleared up by Mrs. Hinson executing a deed to her husband, who was complainant's grantor. She agreed to execute the deed, but only with the exception of one-half of the minerals. In the meantime Parker had sent to Hinson a form of deed from his wife to him. Hinson telephoned Parker and told him that his wife insisted on excepting one-half minerals. Parker stated that this was agreeable, so Hinson's attorney dictated to Dick Hinson, the defendants' son, a clause excepting one-half minerals, which was typed into the deed furnished by Parker. On February 28, 1946, Mrs. Hinson executed the deed in question conveying to her husband L. W. Hinson the sixty acres and excepting in herself one-half of the minerals. Dick Hinson testified and corroborated in substance the testimony of his father concerning these details. Parker, the attorney for Mrs. Thomas, was dead at the time of the trial.

After Mrs. Hinson had executed this deed, it was delivered to a young attorney from Parker's office, who had come over to Lumberton to get it executed. On March 9, 1946, Parker wrote Mrs. Thomas advising her that he had received the deed from Hinson, but that he was not recording it yet ''because he made an exception in it that I must study and consider before doing so.'' This deed remained in Parker's files until his death in December 1948. The executor of his estate sent it to Mrs. Thomas in December 1949. She accepted the deed and recorded it. However, Mrs. Thomas admitted that she had known that Parker had received the deed with an exception of one-half of the minerals, but she said she

had not seen it. She also admitted that she accepted and recorded it in 1949.

After Mrs. Thomas had received the 1946 deed, she went to Mr. Hinson and asked him about collecting her share of the annual delay drilling rentals on her one-half interest in the minerals, under an oil and gas lease which Mrs. Hinson had executed in 1944 to Gulf Refining Company. He advised her to write Gulf, which she did, and thereafter for the four years up to the time of the trial Mrs. Thomas received and accepted delay drilling rentals from Gulf on the oil lease, based upon her one-half interest in the minerals. The lease provided for annual rentals of $60 for the entire sixty-acre tract, and she was paid $30 per year. In 1953 Mrs. Thomas made three mineral conveyances of portions of her thirty mineral acres in the land, and in 1951 she sold timber from the land.

After Mrs. Thomas had contacted Gulf about receiving delay rentals on her one-half mineral interest, she wrote Mr. Hinson on September 18, 1950, asking him to send her one-half of the rentals which he had collected from the property for the years 1943 to 1950 inclusive. In that letter she further stated: ''As you know the rental is sixty dollars a year on the whole place, but as I compromised with you, it will be thirty dollars per year.''

The Hinsons have not paid complainant any of the proceeds of the lease, but the bill of complaint does not ask for that. The bill charges that in fact Mrs. Hinson was holding the title to the property in trust for the partnership of Lampton-Hinson Company; that Mr. Hinson had authority to convey the land for the partnership in 1943; that he fraudulently and knowingly misrepresented to her that he owned title to the land; and that she obtained good title by the 1943 deed. The bill further charges that Mrs. Hinson should be declared a trustee of the land for her benefit, and that both of the Hinsons are estopped by their actions from claiming any

title to one-half of the minerals. And the bill asks that the exception of one-half of the minerals in the 1946 deed be cancelled.

The chancery court found that Mr. Hinson acted in good faith in executing the 1943 deed to Mrs. Thomas, and that he did not know that he did not own it at that time; that Mrs. Hinson did not hold the land as trustee for the partnership, but owned it individually; and that she had no fraudulent intent in connection with the transactions. The court further found that the 1946 deed, in which Mrs. Hinson excepted in herself one-half of the minerals, was an adjustment and compromise of the dispute between the parties, that complainant understood this, and that the 1946 deed was an accord and satisfaction of the prior controversy between the parties. The court further found that Mrs. Thomas in her letter of September 1950 expressly recognized the compromise and the validity of the 1946 deed, and accepted the same with the reservation of minerals, and that by her acceptance she was now estopped to assert the contrary. The court held that although Mrs. Thomas in 1943 took possession of the property through her tenant, Amacker, this adverse possession as to one-half of the minerals was interrupted and terminated when she accepted the 1946 deed with the reservation of one-half minerals in Mrs. Hinson. Hence the final decree dismissed the bill of complaint with prejudice, and decreed that Mrs. Hinson was the owner of a one-half mineral interest.

The great weight of the evidence shows that Mr. Hinson acted in good faith in executing the 1943 deed, and certainly the chancellor's finding that there was no fraud in the execution thereof is amply supported by the evidence. Nor do we think that the testimony of Mrs. Thomas and Mrs. Spiers that Mrs. Hinson was present when her husband talked with Mrs. Thomas and her father in 1943, is sufficient to overthrow the finding of the chancellor that Mrs. Hinson had no fraudulent in-

tent in connection with this matter. Mrs. Hinson did not testify, but her husband testified that he did not recall his wife being present on that occasion; and even if she were present, complainant's evidence, if accepted as correct, fails to show that Mrs. Hinson made any misrepresentations about the matter, but that on the contrary she was silent. The deeds to Mrs. Hinson were on record at that time, and were constructive notice to complainant as well as to the Hinsons. Complainant made no investigation of the records. Although mere silence under some circumstances will operate as an estoppel, we do not think that this is a case of that character. Roberts v. Bookout, 162 Miss. 676, 139 So. 175 (1932); Sulphine v. Dunbar,' 55 Miss. 255 (1877); Staton v. Bryant, 55 Miss. 261 (1877); Davis v. Butler, 128 Miss. 847, 91 So. 279, 709 (1922); Kelly v. Wagner, 61 Miss. 299 (1883).

██ The chancellor was correct in holding that the 1946 deed from Mrs. Hinson to her husband, in which she reserved one-half of the minerals, was the result of a compromise and settlement with complainant, and that it was an accord and satisfaction with her. The deed was obtained with full knowledge by complainant of the exception, and she recognized it as a valid deed for more than seven years before filing this suit. Her attorney's executor delivered it to her in 1949 and she accepted and recorded it. Her letter to Mr. Hinson of September 1950 expressly recognized the compromise effected by this deed. And for four years she accepted delay drilling rentals from Gulf Refining Company based upon a one-half mineral interest. Koenig v. Calcote, 199 Miss. 435, 25 So. 2d 763 (1946). Holland v. Bass, 45 So. 2d 743 (Miss. 1950), Brown v. King, 214 Miss. 437, 58 So. 2d 922 (1952), and White v. Moales, 147 Miss. 758, 113 So. 341 (1928), are particularly in point on this issue. Appellant contends that there was no compromise binding upon her, because a part of and condition precedent to

such accord and satisfaction was that the Hinsons would pay her one-half of the bonus consideration and rentals which had already been received by them under the Gulf lease. However, that position is not supported by the record, nor by the chancellor's finding. The controversy between the parties was settled by the execution of the deed. And this interpretation is amply supported by appellant's 1950 letter and her other actions outlined above. White v. Moales, supra; Brown v. King, supra. In view of the effect of the 1946 deed, which was understood and accepted by appellant, the trial court was correct in finding that after that date appellant could not claim adverse possession of the one-half mineral interest severed from the remainder of the estate and vested in Mrs. Hinson. The adverse possession was interrupted and terminated at that time as to that interest.

Affirmed.

*McGehee, C. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.