MADGE JACKSON *et al.*, Plaintiffs-Appellees, *v.* GUY D. REED *et al.*, Defendants-Appellants.

Fifth District   No. 82—466

Opinion filed April 8, 1983.

Elmer Jenkins, of Benton, for appellants Guy D. Reed, Mildred Harrison, and Mark Harrison.

Terry R. Black and Mark J. Ballard, both of Campbell, Furnall, Moore and Jacobsen, P.C., of Mt. Vernon, for appellees Bill Ventress, Sheridan Ventress, and Chester E. Ventress.

Bernard L. Minton, of McLeansboro, for other appellees.

JUSTICE WELCH delivered the opinion of the court:

The present appeal is taken from a judgment of the circuit court of Hamilton County quieting title to certain mineral interests in the plaintiffs. The land to which the mineral interests attach is approximately 80 acres legally described as "the East Half of the Northeast Quarter of Section Four, Township Six South, Range Five East of the Third Principal Meridian" in Hamilton County. The plaintiffs claim a three-fourths share in those mineral interests through descent or grant from persons who derived their interests, ultimately, from

Cleora Jane Reed, who died intestate in 1912. The defendants assert ownership of all of the mineral interests by virtue of a tax deed issued in 1944 to D. H. Reed.

The plaintiffs' complaint alleged that the tax deed was a cloud on their title to the mineral interests. They contended in count I that the tax deed did not pass title to the mineral interests, while in count II it was suggested that the deed was void as a matter of law for failing to give proper notice to the plaintiffs or their predecessors in interest. In count III, the plaintiffs averred that the defendants or their predecessors in interest did not perfect title to the minerals by instituting suit to recover possession or act to exercise dominion over the minerals within a year of the issuance of the tax deed. (Ill. Rev. Stat. 1939, ch. 120, pars. 736 through 738.) The plaintiffs asserted in count IV that any actions taken by the defendants or their predecessors in interest concerning the mineral interests could not have deprived the plaintiffs of those interests because the defendants or their predecessors in interest, concededly past or present owners of one-fourth of those interests, were co-tenants with the plaintiffs or their predecessors in interest and there was no ouster. The defendants answered by alleging the validity of the tax deed as to the mineral interests and by raising the affirmative defenses that the quiet title action was barred by *laches* or by the statute of limitations.

After a bench trial, the court issued an order in which it found the issues in favor of the plaintiffs, generally, and entered judgment accordingly. The defendants appeal and argue that (1) the evidence introduced at trial did not support the allegations of the complaint, and (2) the action should be considered barred by *laches*. We believe that the evidence introduced at trial supports the allegation that the tax deed did not pass title to the mineral interests, and thus we need not consider the remaining counts of the complaint. We also reject defendants' argument that this action should be barred by *laches*.

Uncontradicted evidence presented at trial shows that in 1912, the entire tract of land, including mineral interests, was owned by Cleora Jane Reed. When she died intestate that year, she was survived by four children, John Emory Reed, Douglas H. Reed, Ada Reed, and Josephine Moss. The defendants' interests are derived through Douglas H. Reed, also referred to as D. H. Reed, while the plaintiffs' interests derive from the remaining siblings. In 1915, Emory Reed and his wife Rachel, Douglas Reed and his wife Ella, and Ada Reed, as yet unmarried, conveyed by deed, to Josephine and Emmett Moss, as joint tenants with right of survivorship, an undivided three-fourths interest in the premises, reserving unto the grantors all

coal, oil and gas underlying the surface, with the right to mine and remove same. Josephine and Emmett Moss, in turn, conveyed the real estate to James and Mae Biggerstaff by warranty deed in 1920, reserving all coal, oil, gas and other minerals. The land was conveyed several other times in the 1920s, in all of which transfers the grantors reserved the mineral interests.

On September 15, 1941, Douglas Reed bought the tax certificate at a foreclosure sale. He paid $279.74, that amount representing the back taxes, penalties and interest assessed against the real estate. The county clerk of Hamilton County executed a tax deed to the real estate to Douglas Reed on May 9, 1944. This deed did not specifically mention the minerals underlying the premises.

James Adkisson, the current supervisor of assessments for Hamilton County, testified at trial. Upon his examination of the 1940 collector's book for Flannigan Township, Hamilton County, in which township the real estate is located, he determined that there had been no separate mineral assessment on that land for that year. Adkisson explained that mineral interests were not assessed for tax purposes unless those interests were in production. In 1940, the mineral interests in six tracts in Section Four of Flannigan Township were assessed for tax purposes, but the premises in question were not among those tracts. The column in the collector's book for the premises contains the notation "9/15/41 13.32 mineral D.H. Reed," but this entry is in pencil, in contrast to the remaining entries on this page of the collector's book.

■ The plaintiffs insist, as they did at trial, that the 1944 tax deed was insufficient to pass title to the mineral interests to the defendants or their predecessors in title. They correctly note that the 1915 and 1920 conveyances effectuated a severance of the mineral estate from the surface estate by the reservation of the mineral interests to the grantors, thus requiring the minerals to be assessed and taxed separately from the surface. (Ill. Rev. Stat. 1941, ch. 94, pars. 6, 7, now Ill. Rev. Stat. 1981, ch. 96½, pars. 156, 157; *Failoni v. Chicago & North Western Ry. Co.* (1964), 30 Ill. 2d 258, 195 N.E.2d 619; *Shell Oil Co. v. Moore* (1943), 382 Ill. 556, 48 N.E.2d 400.) Section 7 of "An Act to revise the law in relation to mines" (Ill. Rev. Stat. 1981, ch. 96½, par. 157) expressly states that when such a separation of the mineral estate from the surface estate occurs, "any sale of the land for any tax or assessment shall not include or affect such mining right." This language means that even though the tax deed did not purport to exclude mineral rights from the transfer to D. H. Reed, it could not have transferred those interests because the taxes upon

which the delinquency occurred pertained only to the surface, and not to the mineral estate. As we have observed, statutory law and assessment practices in Hamilton County required that, if taxes were levied on mineral rights, those rights would be assessed separately from the surface. In the case at bar, no separate assessment or taxation was made of the mineral interests in question prior to the sale of the property, and, as a result, the tax deed, issued for the unpaid taxes, cannot have transferred the mineral interests without contravening section 7 of "An Act to revise the law in relation to mines."

■■■ Nor can the tax deed form the basis of a claim of adverse possession by D. H. Reed and his successors. Where the mineral estate has been severed from the surface estate prior to the execution of an instrument which is asserted as color of title, mere possession of the surface will not support a claim of adverse possession, even if that instrument purports to convey the entire estate. (*Payne v. Williams* (1980), 91 Ill. App. 3d 336, 414 N.E.2d 836; *Jilek v. Chicago, Wilmington & Franklin Coal Co.* (1943), 382 Ill. 241, 47 N.E.2d 96; *Renfro v. Hanon* (1921), 297 Ill. 353, 130 N.E. 740.) After the tax deed was issued, there has been no commercial production of oil, gas or coal on the land, and the only evidence suggesting that any use was made of the minerals was the testimony of defendant Guy Reed that in 1960 or 1961, he sold approximately five wagonloads of coal from a surface outcropping to a neighbor for $4 a load. He also said that he gave some of that coal to an employee of the farm upon which the outcropping was located. These acts fall short of "some act of dominion over the minerals themselves" (*Pickens v. Adams* (1955), 7 Ill. 2d 283, 294, 131 N.E.2d 38, 44) sufficient to establish adverse possession over those minerals. (*Uphoff v. Trustees of Tufts College* (1932), 351 Ill. 146, 184 N.E. 213.) Finding, then, that the tax deed did not pass title to the mineral interests, either directly or through adverse possession, we reject the contention that the trial court's decision was contrary to the evidence introduced at trial. Having so found, we need not consider the evidence in support of the remaining three counts of the plaintiffs' complaint.

The defendants' final assignment of error is that the plaintiffs' quiet title action should be deemed barred by *laches*, inasmuch as it was instituted in 1980, 36 years after the issuance of the tax deed to D. H. Reed. However, unlike in other cases in which challenges to tax deeds have been held to have been barred by *laches* (*Bays v. Matthews* (1982), 108 Ill. App. 3d 1112, 440 N.E.2d 142; *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 147 N.E.2d 341), nothing in the present record shows that the plaintiffs knew or should have known of any claim to

their portion of the mineral estate, but failed to act. There was no evidence that any taxes were paid on the mineral interests, and, accordingly, an inspection of the public records would not have revealed that the defendants or their predecessors in interest were making any claim to the minerals. No commercial production of any minerals was undertaken on the property, so that if the plaintiffs or their predecessors had visited the premises after the issuance of the tax deed, they would have had no reason to doubt their ownership of the minerals. Plaintiff Delsie Lemmon testified that she first became aware of defendants' claim in 1978 or 1979 during a discussion with defendant Guy Reed at a meeting of the Ewing-Northern Coal Association. Guy Reed did not contest that the first notification he had given any of the plaintiffs of his claim occurred either at that meeting or with the filing of a notice with the Association claiming ownership of the minerals under the entire 80-acre tract at approximately that time. Reed admitted that he did not record that notice in Hamilton County, and also conceded that in 1961, he sent a letter, a quitclaim deed covering the mineral interests and a $10 check to several of the plaintiffs or their predecessors in interest, requesting signature of the deeds. None of these persons cashed any of the checks or signed any of the deeds.

██ ▌ One element in establishing the existence of *laches* is "delay in asserting the complainant's rights, the complainant having had notice or knowledge of defendant's conduct and the opportunity to institute a suit." (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 553, 147 N.E.2d 341, 344.) Contrary to the argument in defendants' brief, we find nothing in the record to indicate that the plaintiffs should have been aware of the defendants' claim to the whole mineral estate underlying the 80-acre tract before 1978. Under the facts of this case, a delay until 1980 in filing suit is not so unreasonable as to give rise to *laches*.

For the foregoing reasons, the judgment of the circuit court of Hamilton County quieting title in the plaintiffs is affirmed.

Affirmed.

KARNS and KASSERMAN, JJ., concur.